## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```
|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11** |
|  | : |  |
| **MAXXIM MEDICAL GROUP, INC., et al.,** | : | **Case Nos. 03-10438 (PJW)** |
|  | : |  |
| **Debtors.** | : | **Jointly Administered** |
|  |  | **Ref. Docket No. 442** |
```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

## ORDER APPROVING MOTION FOR ORDER, INTER ALIA: (A) APPROVING THE SALE OF THE PURCHASED ASSETS TO MAXMED ACQUISITION, LLC OR SUCH OTHER SUCCESSFUL BIDDER FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (B) APPROVING AND AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACTS; AND (C) GRANTING RELATED RELIEF

Upon the motion (the "Motion"), of the above captioned debtors and debtors in

possession (collectively, the "Debtors"), requesting entry of an order under sections 105(a), 363,

and 365 of the Bankruptcy Code: (a) approving, among other things, that certain Asset Purchase

Agreement, dated as of September 8, 2003, among Maxxim Medical, Inc., a Delaware corporation,

and certain of its subsidiaries, each of which is a Debtor herein (collectively, "Maxxim") and MMI

Acquisition Corp. ("MMAC") pursuant to which Maxxim has agreed to a sale of substantially all

of Maxxim's assets to MMAC or the Successful Bidder,[1] subject to higher and better offers; (b)

approving the Sale Procedures with respect to the proposed sale of substantially all of the

Purchased Assets, including the Expense Reimbursement and the Break-Up Fee; (c) approving the

form and manner of notice of the Motion, the Auction, the objection deadline with respect to the

Proposed Asset Sale, the Sale Procedures and the Cure Objection Procedures and the Auction; (d)

---

[1]    To the extent not otherwise defined herein or in the Motion, capitalized terms shall have the meanings
ascribed to them in the Purchase Agreement (as defined below).

scheduling the Sale Hearing and objection deadline with respect to the Proposed Asset Sale; and

(e) granting related relief; and upon the order, dated September 25, 2003 (the "Sale Procedures Order") approving certain of the relief requested in the Motion, including: (a) approving the Sale Procedures; (b) approving the Cure Objection Procedures; (c) scheduling the Auction; (d) scheduling the Sale Hearing and objection deadline with respect to the Proposed Asset Sale; and (e) approving the form and manner of notice of the Motion, the Auction, the objection deadline with respect to the Proposed Asset Sale, the Sale Procedures and the Cure Objection Procedures and the Auction; and notice of the Motion, the Auction, the objection deadline with respect to the Proposed Asset Sale, the Sale Procedures and the Cure Objection Procedures and the Auction having been given in accordance with the Motion and the Sale Procedures Order; and the Debtors having conducted the Auction on October 27, 2003; and the Debtors having determined that the final bid of MaxMed Acquisition, LLC ("MaxMed" or the "Purchaser") for the Purchased Assets constitutes the highest or otherwise best bid received at the Auction; and the Debtors, pursuant to the Motion and sections 105(a), 363 and 365 of the Bankruptcy Code, having sought entry of an order (the "Order"): (i) authorizing and approving the sale of the Purchased Assets to the Purchaser, pursuant to section 363(b) of the Bankruptcy Code, in accordance with the terms and conditions of the Asset Purchase Agreement among Maxxim, MaxMed and the other parties designated to be signatories thereto (including all schedules and exhibits thereto), a copy of which is attached hereto (without schedules and exhibits) as Exhibit A (as supplemented in the record of the Auction, the "Purchase Agreement"), free and clear of all liens, claims, interests and encumbrances (other than Permitted Transferred Liens and Assumed Liabilities (each as defined below)), with such liens, claims, interests and encumbrances to attach to the proceeds of such sale, as more fully set forth in the Purchase Agreement and this Order; (ii) authorizing Maxxim to

2

assume, assign and sell to the Purchaser (or its Designees (as defined below)) pursuant to section 365 of the Bankruptcy Code the Assigned Contracts, in accordance with the terms of the Purchase Agreement and the Assignment and Assumption Agreement(s); (iii) authorizing and approving the Purchase Agreement; (iv) authorizing the Debtors to execute, deliver and perform the Purchase Agreement and to consummate all transactions related to the above; and (v) granting related relief; and the Court having held the Sale Hearing on October 28, 2003; and the appearances of all interested parties and all responses and objections to: (a) the relief requested in the Motion; and/or (b) cure amounts or the assignability of Maxxim's leases and executory contracts having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, the Motion and said responses and objections; and after due deliberation and sufficient cause appearing therefor, the Court hereby

## FINDS, DETERMINES, AND CONCLUDES THAT:

A. This Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b) and 1334.

B. Venue of this case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. Determination of this Motion is a core proceeding under 28 U.S.C. § 157 (b)(2)(A), (M), (N) and (O).

D. The statutory predicates for the relief requested herein include sections 105, 363 and 365 of the Bankruptcy Code and rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules.

3

E.　The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

F.　To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

G.　Proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the objection deadline with respect to the Proposed Asset Sale, the Sale Procedures, and the Cure Objection Procedures has been given in accordance with Bankruptcy Rules 2002, 4001, 6004 and 6006, as modified by the Sale Procedures Order where applicable. The foregoing notice constitutes good, appropriate and sufficient notice, and no other or further notice need be given, nor is notice of the entry of this Order required.

H.　Proper, timely, adequate and sufficient notice of the assumption and assignment of the Assigned Contracts and the cure payments to be made therefore has been provided in accordance with sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rule 9014. The foregoing notice constitutes good, appropriate and sufficient notice, and no other or further notice of the assumption and assignment of the Assigned Contracts is or shall be required.

I.　A reasonable opportunity has been afforded any interested party to make a higher or otherwise better offer to purchase the Purchased Assets, and to assert an objection to or be heard regarding: (i) the relief requested in the Motion, including, but not limited to, approval of the Purchase Agreement; (ii) cure amounts relating to the Assigned Contracts; and (iii) procedures relating to the assumption and assignment of the Assigned Contracts.

4

J.      The Debtors have marketed the Purchased Assets and conducted the sale process in compliance with the Sale Procedures Order.

K.      The Debtors have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets and the transactions contemplated by the Purchase Agreement have been duly and validly authorized by all necessary corporate action of the Debtors. The Debtors have all the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement and no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate such transactions.

L.      Entry into the Purchase Agreement and consummation of the transactions contemplated thereby constitute the exercise by Debtors of sound business judgment and such acts, and the relief requested in the Motion, are in the best interests of the Debtors, their bankruptcy estates, their creditors, and other parties in interest

M.      The Debtors have demonstrated both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for consummating the sale of the Purchased Assets pursuant to section 363(b) of the Bankruptcy Code, in that, among other things: (a) prompt approval and consummation of the sale of Maxxim's assets will preserve the viability of the Debtors' businesses as a going concern, protect against deterioration in the value of the Debtors' assets due to uncertainty about their future and maximize the value of the estates; (b) Purchaser has made a substantial offer to acquire the Purchased Assets; and (c) the sale process conducted by the Debtors pursuant to the Sale Procedures Order, including subjecting the Purchased Assets to an auction, permitted Purchaser's offer to be tested against other offers and the market generally.

5

N.     The Agent and the Creditors' Committee consent to the entry of an order, substantially in the form hereof, approving the Purchase Agreement.

O.     The Purchase Agreement represents the highest or otherwise best offer received by the Debtors for the Purchased Assets.

P.     The terms and conditions of the Purchase Agreement and the sale consideration to be realized by Maxxim pursuant to the Purchase Agreement are fair and reasonable. The Purchase Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other practical alternative available at this time.

Q.     The sale of the Purchased Assets and other transactions contemplated by the Purchase Agreement must be approved and consummated promptly in order to preserve the value of the Purchased Assets.

R.     The transactions contemplated by the Purchase Agreement were proposed and negotiated and entered into by the Debtors and Purchaser at arm's length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Purchaser is a purchaser in good faith of the Purchased Assets under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby.

S.     The Purchaser has not engaged in any conduct that would cause or permit the Purchase Agreement and the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code or otherwise result in liability to the Purchaser under section 363(n).

T.     The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Purchased Assets to the Purchaser were

6

61890.1001

not free and clear of all Interests (as defined herein) other than Permitted Transferred Liens[2] and the Assumed Liabilities, or if Purchaser would, or in the future could, be liable for any of the Interests.

U. All amounts, if any, to be paid by the Debtors pursuant to the Purchase Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Purchase Agreement shall constitute administrative expenses under sections 503(b) and 507(a)(1) of the Bankruptcy Code and are payable, in accordance with the Purchase Agreement, if and when any Debtor's obligation arises thereunder without further order of the Court.

V. Consummation of the sale does not subject the Purchaser or the Purchased Assets to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind against the Debtors or their property or any affiliate of the Debtors or its property, whether known or unknown, contingent or otherwise, whether existing as of the date hereof or hereafter) arising, except with respect to Assumed Liabilities and Permitted Transferred Liens.

W. Each of the Executory Contracts is an executory contract within the meaning of section 365(a) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, all restrictions on assignment in any of the Executory Contracts are unenforceable against the Debtors and all Assigned Contracts may be lawfully assigned to the Purchaser or its designees, Medline Industries, Inc. and Argon Medical Devices, Inc. (the "Designees").

X. The decision to assume and assign the Assigned Contracts pursuant to the Purchase Agreement is based on the reasonable exercise of the Debtors' business judgment and is

---

[2]     For purposes of this Order "Permitted Transferred Liens" shall mean only those liens referenced in subsection (b) (to the extent such liens secure Assumed Liabilities) and (c)(i)of the definition of Permitted Liens in the Purchase Agreement.

7

in the best interests of the Debtors' bankruptcy estates. The Assigned Contracts are an integral part of the Purchased Assets and, accordingly, such assumption and assignment of Assigned Contracts is reasonable, enhances the value of the Debtors' estates and does not constitute unfair discrimination.

Y.    The cure amounts in respect of the Assigned Contracts that are either undisputed or will be determined by the Court at a hearing (the "Cure Amounts") or resolved by agreement among the Debtors and the claimants prior to such hearing, are the sole amounts necessary to cure all defaults (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2)) required to be cured under section 365 of the Bankruptcy Code, and to pay all actual or pecuniary losses that have resulted from such defaults, under the Assigned Contracts. Upon payment of the Cure Amounts by Maxxim or upon Maxxim providing adequate assurance that they will promptly cure, no defaults of the Debtors will exist under any of the Assigned Contracts.

Z.    Pursuant to the Sale Procedures Order, those entities not having filed a Cure Objection in accordance with the Sale Procedures Order shall have a cure amount of zero.

AA.    The Purchaser and its Designees have demonstrated adequate assurance of future performance with respect to the Assigned Contracts to be assigned to each of them within the meaning of sections 365(b)(1)(C), 365(b)(3) and (f)(2)(B) of the Bankruptcy Code.

BB.    No defaults exist in Maxxim's performance under the Assigned Contracts as of the date of this Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code ) other than the failure to pay amounts equal to the Cure Amounts.

8

CC.     The Debtors may sell the Purchased Assets free and clear of all Interests (as defined herein), other than Permitted Transferred Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in subsections (1)-(5) of section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Interests, other than Permitted Transferred Liens and the Assumed Liabilities, who did not object, or who withdrew their objections, to the sale or the Motion are deemed to have consented pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code. Those holders of Interests who did object fall within one or more of the other subsections of sections 363(f) and 365 of the Bankruptcy Code and are adequately protected by delivery of the Mandatory Repayment as described in paragraph 4 below or by having their Interests, if any, attach to the proceeds of the sale as more fully described herein.

DD.     Except with respect to the Assumed Liabilities and Permitted Transferred Liens, the transfer of the Purchased Assets to Purchaser will not subject Purchaser or its assets to any liability whatsoever with respect to the operation of the Debtors' business prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.

For all of the foregoing and after due deliberation, the Court hereby

## ORDERS, ADJUDGES, AND DECREES THAT:

1.      The Motion, the Purchase Agreement and the transactions contemplated thereby are hereby approved.

2.      The Purchase Agreement, the Ancillary Agreements and all of the terms and conditions thereof, are hereby approved. Pursuant to section 363(b) of the Bankruptcy Code,

9

Maxxim is authorized to sell the Purchased Assets to the Purchaser upon the terms and subject to the conditions set forth in the Purchase Agreement and herein.

3. Pursuant to sections 363(b) and 365 of the Bankruptcy Code, each of the Debtors is hereby authorized and empowered on the Closing Date to perform under, consummate and implement the Purchase Agreement, together with the Ancillary Agreements and all other additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the transactions contemplated thereby, and, pursuant to the Purchase Agreement, to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, any or all of the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Purchase Agreement and herein.

4. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the closing under the Purchase Agreement, the Purchased Assets shall be transferred to the Purchaser free and clear of all mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, restrictions or charges of any kind or nature (the foregoing collectively referred to as "Liens" herein) and all debts, liabilities, objections, commitments, responsibilities, claims (as that term is defined in the Bankruptcy Code), counterclaims, defenses, and offsets of any kind and nature, arising prior to the Closing Date or relating in any way to acts or omissions of the Debtors occurring prior to the Closing Date, however arising (the foregoing collectively referred to as "Claims" herein) and all interests of any kind whatsoever (such Liens, Claims and other interests referred to collectively herein as "Interests") other than Permitted Transferred Liens and Assumed Liabilities; provided that (a) the

10

Interests of the DIP Secured Parties and the Pre-Petition Secured Parties (each as defined in the DIP Order and collectively, the "Secured Parties") on the Purchased Assets shall be released, terminated and discharged only upon delivery to the Agent on behalf of the Secured Parties, as adequate protection, of the Mandatory Repayment from the proceeds of the sale of the Purchased Assets (the "Sale") contemporaneously with the closing of the Sale, which Mandatory Repayment shall be applied in accordance with the Documents or the Existing Agreements, as applicable (each as defined in the DIP Order); provided that amounts to be applied pursuant to the Existing Agreements will be applied first, to cash collateralize any outstanding letters of credit as described in Section 2.05(j) of the Pre-Petition Credit Agreement (as defined in the DIP Order) and thereafter, in accordance with the Existing Agreements) (except that if the Debtors do not give written notice of the amount of the Mandatory Repayment to the Purchaser at least two Business Days prior to the closing under the Purchase Agreement, the Interests of the Secured Parties shall be released, terminated and discharged upon the closing of the Sale under the Purchase Agreement), and (b) all other Interests (other than Permitted Transferred Liens and Assumed Liabilities) shall be released, terminated and discharged as to the Purchased Assets upon the closing of the Sale.[3] All Interests (other than Permitted Transferred Liens and Assumed

---

[3]     "DIP Order" shall mean the Final Order (I) Authorizing Debtors (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. §363 and (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364.

"Mandatory Repayment" shall mean the payment to the Agent, (x) on behalf of the DIP Secured Parties, of all DIP Obligations (as defined in the DIP Order) (the "DIP Repayment") and (y) on behalf of the Pre-Petition Secured Parties, of $50 million or, if less, the following amount: the aggregate amount of gross proceeds received by the Debtors from the Sale, after deducting therefrom a reasonable estimate of (i) all cash expenditures by the Debtors from the closing date of the Sale through the effective date of the Debtors' chapter 11 plan (the "Plan"), including any purchase price adjustment and closing and transaction costs associated with the Sale (other than the DIP Repayment), (ii) all priority and administrative expense claims

11

Liabilities) (including the Interests of the Secured Parties unless the DIP Obligations and Pre-Petition Obligations are paid in full) shall attach to the proceeds of the Sale (except the Mandatory Repayment shall be paid to the Agent on behalf of the Secured Parties free and clear of all Interests), with the same validity, extent and priority as such Interests had immediately prior to the Sale (without prejudice to the rights, claims, defenses, offsets, demands and objections, if any, of the Debtors and all interested parties with respect to, among other things, the validity, extent and priority of such Interests); provided that if the Stipulation (as defined in footnote 3) is effective, the Interests of the Secured Parties with respect to the Unsecured Creditors' Fund (as defined in footnote 3) shall be as provided in the Stipulation. The Debtors are hereby directed to give written notice of the amount of the Mandatory Repayment and a reasonable estimate of the Emergence Costs and the Percentage Payment to the Purchaser, the Agent and the Official Committee of Unsecured Creditors no later than two Business Days prior to the closing under the Purchase Agreement. Purchaser shall remain liable for the Assumed Liabilities as provided in the Purchase Agreement. If the Purchaser purchases any assets of Maxxim Medical Canada Limited ("Canada") pursuant to the Purchase Agreement or the Supply Agreement or if the Purchaser exercises the Maxxim Canada Option, the Agent is directed to release any and all Interests of the

(including reserves therefor) to be payable pursuant to the Plan (iii) all secured claims having priority over the claims and liens of the Pre-Petition Secured Parties and (iv) all costs and expenses to be incurred after the effective date of the Plan that relate directly to the administration and liquidation of those remaining assets of the Debtors that are not sold pursuant to the Sale, the resolution of claims against the Debtors and the winding up of the Debtors' estates ((i), (ii), (iii) and (iv), collectively the "Emergence Costs") and (v) the greater of $2 million and the Percentage Payment (as defined below) (the "Unsecured Creditors' Fund"), established pursuant to the stipulation among the Official Committee of Unsecured Creditors and the Pre-Petition Secured Parties (the "Stipulation").

"Percentage Payment" shall mean a payment equal to 7.5% of the Net Proceeds of the Sale. For this Purpose, Net Proceeds means the aggregate amount of gross proceeds received by the Debtors from the Sale (including for this purpose the principal amount of any claims of the lenders assumed by the Purchaser, but excluding any other liabilities assumed by the Purchaser as well as closing and transaction costs associated with the Sale) less the sum of (i) $50 million, (ii) a reasonable estimate of Emergence Costs and (iii) the DIP Repayment.

12

Secured Parties in the assets (to the extent not sold or transferred free and clear of all Interests (other than Assumed Liabilities and Permitted Transferred Liens) to the Purchaser at closing under the Purchase Agreement) and capital shares of Canada, (including the release of the guarantees of the DIP Obligations and Pre-Petition Obligations (as defined in the DIP Order)) with such Interests to attach to the proceeds thereof, with the same validity, extent and priority as such Interests had immediately prior to the exercise of such option (without prejudice to the rights, claims, defenses, offsets, demands and objections, if any, of the Debtors and all interested parties with respect to, among other things, the validity, extent and priority of such Interests). If the Purchaser becomes entitled to a payment from the Adjustment Escrow Amount pursuant to Section 2.4(b)(i) of the Purchase Agreement, the Agent is directed to release any and all Interests of the Secured Parties in such payment.

5.     The transfer of the Purchased Assets and the assignment of the Assigned Contracts pursuant to the Purchase Agreement (a) shall constitute legal, valid and effective transfers of property of the Debtors' estates to the Purchaser, and (b) except as expressly provided in the Purchase Agreement with respect to Assumed Liabilities, shall vest the Purchaser (or the applicable Designee with respect to the Assigned Contracts) with the Debtors' right, title and interest in the Purchased Assets and the Assigned Contracts free and clear of all Interests other than Permitted Transferred Liens and Assumed Liabilities (as more fully described in paragraph 4 above) including, among other things, those Interests (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors' or Purchaser's interest in such Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date.

13

61890.1001

6. The sale of the Purchased Assets under the Purchase Agreement will constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

7. In the event that the Debtors and the Purchaser consummate the transactions contemplated by the Purchase Agreement, the Debtors and the Purchaser shall be entitled to the protections provided under section 363(m) of the Bankruptcy Code.

8. The consideration provided by Purchaser for the Purchased Assets under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

9. Except as expressly set forth in the Purchase Agreement, all persons and entities holding Interests against the Debtors or the Purchased Assets of any kind and nature whatsoever, hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests against the Purchaser or its Designees, their successors or assigns, their properties, or the Purchased Assets with respect to any Interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Purchased Assets, other than Permitted Transferred Liens and Assumed Liabilities. Following the Closing Date no holder of an Interest in the Debtors, other than Permitted Transferred Liens and Assumed Liabilities, shall interfere with Purchaser's or the Designee's title to or use and enjoyment of the Purchased Assets based on or related to such Interest, or any actions that the Debtors may take in their chapter 11 cases.

10. Except as expressly set forth in the Purchase Agreement, none of the Purchaser or the Designees are assuming nor shall any of them in any way whatsoever be liable or

14

responsible, as a successor or otherwise, for any debts, liabilities, obligations, commitments or responsibilities of the Debtors or any of their predecessors or affiliates or any debts, liabilities, obligations, commitments, responsibilities or other Interests in any way whatsoever relating to or arising from the Purchased Assets, or the Debtors' operations or use or ownership of the Purchased Assets (including, without limitation, the Assigned Contracts), arising prior to consummation of the transactions contemplated by the Purchase Agreement, including, but not limited to, liabilities on account of any taxes arising accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date.

11. Except as expressly provided in the Purchase Agreement, none of the Purchaser or the Designees are acquiring or assuming, and the consummation of the Sale shall not subject them to, any Interests of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transactions including, but not limited to, liability based, in whole or in part, directly or indirectly, on any theory of equitable subordination or successor or transferee liability.

12. Subject to the terms of the Purchase Agreement, pursuant to sections 363(b), 363(f), 365(a), 365(b) and 365(f) of the Bankruptcy Code, the assumption, assignment and sale by Maxxim to the Purchaser (or the applicable Designee) of the Assigned Contracts free and clear of all Interests, other than Permitted Transferred Liens and Assumed Liabilities, in such property of an entity other than the Maxxim's estate shall be effected by this Order; provided, however, that if the Closing shall fail to occur, none of the Assigned Contracts shall be deemed to be assumed or assumed and assigned. The Debtors are hereby authorized to execute and deliver to

15

the Purchaser such documents or other instruments as may be reasonably necessary to give full effect to the assignment and transfer of such Assigned Contracts to the Purchaser (or the applicable Designee), all as of the Closing Date.

13. The Debtors are authorized to assign and transfer to Purchaser all of the Debtors' rights, title and interest (including common law rights) in and to all of the intangible property of the Debtors to be assigned and transferred to the Purchaser under the Purchase Agreement; provided, however, such rights shall not include the Excluded Assets.

14. Pursuant to the terms of the Purchase Agreement and consistent with the requirements of the Bankruptcy Code, the Debtors are hereby authorized and empowered to pay the Cure Amounts, if any, in respect of the assumption, assignment and sale to Purchaser (or the applicable Designee) of the Assigned Contracts, by paying all undisputed Cure Amounts prior to Closing or as otherwise ordered by the Court at a hearing prior to or after Closing. Neither Purchaser nor any Designee shall have any obligation to pay, or any liability for, such Cure Amounts. Subject to the foregoing, the Debtors shall have no cure obligations to non-Debtor parties to Assigned Contracts.

15. Upon the closing of the Purchase Agreement in accordance with this Order, any and all defaults under the Assigned Contracts shall be deemed cured in all respects.

16. The Assigned Contracts shall, upon assignment to the Purchaser (or the applicable Designee), be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer. The Purchaser (or the applicable Designee) shall assume obligations of the Debtors arising from and after the Closing

16

under the Assigned Contracts and shall not assume any obligation under the Assigned Contracts accruing thereunder prior to the Closing. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any liability for any breach of such Assigned Contracts occurring after such assignment.

17. Non-Debtor parties to the Assigned Contracts who failed to file a Cure Objection in accordance with the Sale Procedures Order are forever barred from asserting an objection as to the cure amount or to the assumption and assignment of the applicable Assigned Contract.

18. This Order is and shall be effective as a determination that, on the Closing Date, all Interests existing on the Purchased Assets prior to the Closing Date have been unconditionally released from such Purchased Assets other than Permitted Transferred Liens and Assumed Liabilities; provided that (a) the Interests of the Secured Parties on the Purchased Assets shall be released, terminated and discharged only upon delivery to the Agent on behalf of the Secured Parties, as adequate protection, of the Mandatory Repayment from the proceeds of the Sale contemporaneously with the closing of the Sale, which Mandatory Repayment shall be applied in accordance with the Documents or the Existing Agreements, as applicable, provided that amounts to be applied pursuant to the Existing Agreements will be applied first, to cash collateralize any outstanding letters of credit as described in Section 2.05(j) of the Pre-Petition Credit Agreement and thereafter, in accordance with the Existing Agreements (except that if the Debtors do not give written notice of the amount of the Mandatory Repayment to the Purchaser at least two Business Days prior to the closing under the Purchase Agreement, the Interests of the Secured Parties shall be released, terminated and discharged upon the closing of the Sale under the Purchase Agreement) and (b) all other Interests (other than Permitted Transferred Liens and

17

Assumed Liabilities) shall be released, terminated and discharged as to the Purchased Assets upon the closing of the Sale. All Interests (other than Permitted Transferred Liens and Assumed Liabilities) (including the Interests of the Secured Parties unless the DIP Obligations and Pre-Petition Obligations are paid in full) shall attach to the proceeds of the Sale (except the Mandatory Repayment shall be paid to the Agent on behalf of the Secured Parties free and clear of all Interests) with the same validity, extent and priority as such Interests had immediately prior to the Sale (without prejudice to the rights, claims, defenses, offsets, demands and objections, if any, of the Debtors and all interested parties with respect to, among other things, the validity, extent and priority of such Interests); provided that if the Stipulation becomes effective, the Interests of the Secured Parties with respect to the Unsecured Creditors' Fund shall be as provided in the Stipulation.

19. This Order (a) is and shall be effective as a determination that the conveyance of Purchased Assets described in decretal paragraph 3 has been effected upon the Closing and (b) shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. At or prior to the closing of the sale of the Purchased Assets, each person is authorized to execute such documents and take all other actions as may be necessary or

18

appropriate to release its Interests against the Purchased Assets, other than Permitted Transferred Liens and Assumed Liabilities, as such Interests may have been recorded or may otherwise exist.

20. If any person or entity having filed financing statements or other documents or agreements evidencing Interests in the Purchased Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the person or entity has with respect to the Purchased Assets, then (i) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets and (ii) Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever in the Purchased Assets.

21. All entities who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of said Purchased Assets to the Purchaser on the Closing Date.

22. Nothing contained in any chapter 11 plan confirmed in these cases or the order of confirmation confirming any such chapter 11 plan or any other order entered in these cases shall conflict with or derogate from the Purchase Agreement or this Order.

23. Except as otherwise set forth in the record of the Sale Hearing, all objections and responses concerning the Motion, including, but not limited to, objections to cure amounts of Assigned Contracts, are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing and to the extent any such objection or response was not

19

otherwise withdrawn, waived or settled, they and all reservations and rights therein are overruled and denied.

24.     The Purchaser and the Designees have provided adequate assurance of their future performance under the Assigned Contracts to be assigned to them and the proposed assumption and assignment of the Assigned Contracts satisfies the requirements of the Bankruptcy Code including, inter alia, sections 365(b)(1), 365(b)(3) and 365(f), to the extent applicable.

25.     There shall be no accelerations, assignment fees, increases (including advertising rates), or any other fees charged to the Purchaser as a result of the assignment of the Assigned Contracts, and the validity of the assumption, assignment and sale to the Purchaser shall not be affected by any dispute between the Debtors and another party to an Assigned Contract regarding the payment of the applicable Cure Amount.

26.     All parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser, its Designees or their successors or assigns any violation under an acceleration clause, assignment fee, default or breach under, any Claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing or arising by reason of the Closing or any Claim asserted or assertable against the Debtors.

27.     Neither the Purchaser nor any Designee shall be liable for any claims of the lessors or contract parties under the Assigned Contracts in respect of any claim or breach of an Assigned Contract that accrued prior to Closing.

28.     This Order shall be effective and enforceable immediately upon entry, shall not be subject to any stay of enforcement, including any stay provided by Bankruptcy Rules 6004 and 6006, and its provisions shall be self-executing.

20

29. The Purchase Agreement, and any related agreements, documents or instruments may be modified, amended or supplemented by parties thereto in accordance with the terms thereof without further order of the Court, provided that such modifications, amendments or supplements, if any, are not material and adverse to the Debtors.

30. Subject to the provisions of, and except as provided in the Purchase Agreement, this Court shall retain exclusive jurisdiction (i) to interpret and enforce the provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, (ii) to compel delivery of the Purchased Assets to the Purchaser, (iii) to protect the Purchaser and the Designees against any Interest in the Purchased Assets, (iv) to compel delivery of the Purchase Price and all adjustments to the Purchase Price under the Purchase Agreement, (v) to compel delivery of the Mandatory Repayment to the Agent on behalf of the Secured Parties (vi) to interpret, implement and enforce the provisions of this Order and (vii) to hear and determine any and all disputes between the Debtors and/or the Purchaser arising out of or relating to this Order and the Purchase Agreement, and any non-Debtor party arising out of or relating to, among other things, any Assigned Contracts concerning, inter alia, the Debtors' assumption and assignment thereof to the Purchaser under the Purchase Agreement; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Purchase Agreement or this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

31. The provisions of this Order are nonseverable and mutually dependent.

21

61890.1001

32.     The terms and provisions of the Purchase Agreement and this Order shall inure to the benefit of the Purchaser, the Debtors, and their respective successors and assigns (including the Designees), including but not limited to any chapter 7 or chapter 11 trustee that may be appointed in the Debtors' bankruptcy cases and shall be binding upon any trustee, party, including, but not limited to, all persons asserting Interests in the Purchased Assets, entity or fiduciary that may be appointed in connection with these cases or any other or further cases involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

33.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and this Order.

34.     The terms and provisions of the Purchase Agreement, together with all the terms and provisions of this Order, shall be binding in all respects upon the Debtors, their estates and creditors, the Purchaser, and their respective affiliates, successors and assigns (including the Designees), and any affected third parties including but not limited to all non-Debtor parties to the Assigned Contracts, and all persons asserting an Interest in the Debtors' estates or any of the Purchased Assets to be sold pursuant to the Purchase Agreement. The Purchase Agreement and the transactions contemplated thereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any chapter 7 or chapter 11 trustee of the Debtors and their estates.

35.     The Debtors are authorized to select new names and to modify the caption following notice of such name change.

22

36.    The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that the Purchase Agreement be approved in its entirety.

37.    The requirement pursuant to Local Rule 9013-1(b) that the Debtors file a memorandum of law in support of the Motion is hereby waived.

38.    Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized, but not directed, to pay prepetition franchise tax obligations necessary to be in good standing in the applicable states.

39.    Notwithstanding anything herein to the contrary, until such time as QAD, Inc. consents to the assumption and the assignment of the Multinational Software Product License Agreement, made effective on August 1, 1995 (as may be amended, the "QAD Agreement"), this Order shall not effectuate the assumption and assignment of the QAD Agreement to the Purchaser or its Designees.

Date:    October 2003
         Wilmington, Delaware

Peter J. Walsh
United States Bankruptcy Judge

23

61890.1001