## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------x      Chapter 11
In re:                        :     Case No. 03-10438 (PJW)
                              :     Jointly Administered
MAXXIM MEDICAL               :
GROUP, INC., et al.,         :
                              :
                  Debtors.   :
-----------------------------x      Related D.I. 528, 529
```

**NOTICE OF (I) FILING STIPULATION AMONG OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND PRE-PETITION AND POST-PETITION LENDERS REGARDING SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTORS PURSUANT TO SECTION 363 OF BANKRUPTCY CODE OR CHAPTER 11 PLAN AND (II) WITHDRAWAL OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MAXXIM MEDICAL GROUP, INC., ET AL. FOR ORDER, PURSUANT TO 11 U.S.C. § 105(a) AND FED. R. BANKR. P. 9019, APPROVING STIPULATION AND CONSENT ORDER AMONG OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PRE-PETITION AND POST-PETITION LENDERS, AND MAXXIM MEDICAL GROUP, INC., ET AL. REGARDING SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTORS PURSUANT TO SECTION 363 OF BANKRUPTCY CODE OR CHAPTER 11 PLAN**

**PLEASE TAKE NOTICE** that on October 17, 2003, the

Official Committee of Unsecured Creditors (the "Committee") of

Maxxim Medical Group, Inc., et al., debtors and debtors in

possession in the above-captioned cases ("Maxxim"), filed the

Motion Of Official Committee Of Unsecured Creditors Of Maxxim

Medical Group, Inc., Et Al. For Order, Pursuant To 11 U.S.C. §

105(a) And Fed. R. Bankr. P. 9019, Approving Stipulation And

Consent Order Among Official Committee Of Unsecured Creditors,

Pre-Petition And Post-Petition Lenders (the "Lenders"), And

Maxxim Medical Group, Inc., Et Al. Regarding Sale Of

Substantially All Assets Of Debtors Pursuant To Section 363 Of

Bankruptcy Code Or Chapter 11 Plan (D.I. Number 529) (the "9019 Motion"); and

**PLEASE TAKE FURTHER NOTICE** that, among other things, the 9019 Motion sought approval of the Stipulation And Consent Order Among Official Committee Of Unsecured Creditors, Pre-Petition And Post-Petition Lenders, And Maxxim Medical Group, Inc., Et Al. Regarding Sale Of Substantially All Assets Of Debtors Pursuant To Section 363 Of Bankruptcy Code Or Chapter 11 Plan (the "Stipulation"), among the Committee, the Lenders, and Maxxim; and

**PLEASE TAKE FURTHER NOTICE** that the 9019 Motion and the Stipulation were presented to the Bankruptcy Court for approval during the omnibus hearing held on October 28, 2003 (the "Hearing"); and

**PLEASE TAKE FURTHER NOTICE** that on the basis of the record at the Hearing, the Committee is filing a copy of the Stipulation Among Official Committee Of Unsecured Creditors And Pre-Petition And Post-Petition Lenders Regarding Sale Of Substantially All Assets Of Debtors Pursuant To Section 363 Of Bankruptcy Code Or Chapter 11 Plan (the "Committee-Lender Stipulation"), a copy of which is attached hereto as Exhibit 1; and

**PLEASE TAKE FURTHER NOTICE** that Maxxim is not a party to the Committee-Lender Stipulation; and

2

**PLEASE TAKE FURTHER NOTICE** that in light of the

Court's direction during the Hearing and the filing of the

Committee-Lender Stipulation, the 9019 Motion is hereby

withdrawn as moot.

Dated: Wilmington, Delaware
       November 6, 2003

**MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP**

Stephen J. Blauner (SB 1997)
James C. Tecce (JT 5910)
1 Chase Manhattan Plaza
New York, New York  10005
(212) 530-5000

-and-

**LANDIS, RATH & COBB LLP**

By: _____
    Adam G. Landis (ID #3407)
    Kristin A. Giakas (ID #3349)
    919 Market Street, Suite 600
    P.O. Box 2087
    Wilmington, DE 19801
    (302) 467-4400

Counsel and Proposed Conflicts Co-
Counsel To Official Committee of
Unsecured Creditors of Maxxim Medical
Group, Inc., et al.

3

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-----------------------------x    Chapter 11
In re:                        :    Case Nos. 03-10438 (PJW)
                              :    Jointly Administered
MAXXIM MEDICAL                :
GROUP, INC., et al.,          :
                              :
              Debtors.        :
-----------------------------x
```

**STIPULATION AMONG OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**AND PRE-PETITION AND POST-PETITION LENDERS REGARDING SALE OF**
**SUBSTANTIALLY ALL ASSETS OF DEBTORS PURSUANT TO SECTION 363**
**OF BANKRUPTCY CODE OR CHAPTER 11 PLAN**

**WHEREAS**, on February 11, 2003 (the "Petition

Date"), Maxxim Medical Group, Inc. and its affiliated debtors

and debtors in possession in the above-captioned cases

("Maxxim" or the "Debtors"), each filed voluntary petitions

for relief under chapter 11 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy

Code"); and

**WHEREAS**, on February 24, 2003, the United States

Trustee appointed the Official Committee of Unsecured

Creditors of Maxxim Medical Group, Inc., et al. (the

"Committee"); and

**WHEREAS**, prior to the Petition Date, certain of the

Debtors were party to (i) the Credit Agreement, dated as of

November 12, 1999 (as amended, supplemented, or otherwise

modified, the "Pre-Petition Credit Agreement"), among Maxxim

Medical, Inc. (Texas) ("MMI (Texas)"); Maxxim Medical Group,

Inc., the lenders listed therein (the "Pre-Petition

Lenders"), JPMorgan Chase Bank, as Administrative Agent, Collateral Agent, and Issuing Bank thereunder (the "Pre-Petition Agent"), and (ii) the Security Agreement dated as of November 12, 1999 among Maxxim Medical Group, Inc., MMI (Texas), certain subsidiaries of Maxxim, and the Pre-Petition Agent (together with the Pre-Petition Credit Agreement and all related documents, including but not limited to the pledge agreement, mortgages, all other Security Documents (as defined in the Pre-Petition Credit Agreement), and all other documentation executed in connection therewith, as such documents may have been amended, the "Pre-Petition Agreements"); and

WHEREAS, certain Senior Subordinated Notes due 2009 were issued pursuant to the Indenture dated as of November 12, 1999 among Maxxim Medical Group, Inc., as issuer; MMI (Texas), Maxxim Medical, Inc. (Delaware) ("MMI (Delaware)"), Fabritek La Romana, Inc., and Maxxim Investment Management, Inc., as guarantors; and the Bank of New York, as trustee (as amended, the "Op-Co Indenture"); and

WHEREAS, certain Senior Discount Notes due 2010 were issued pursuant to the Indenture dated as of November 12, 1999 among MMI (Texas), as issuer, and the Wilmington Trust Company, as trustee (as amended, the "Hold-Co Indenture"); and

- 2 -

**WHEREAS**, on March 19, 2003, this Court entered the Final Order (I) Authorizing Debtors (A) To Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362, 364(c)(2), 364(c)(3) And 364(d)(1) And (B) To Utilize Cash Collateral Pursuant To 11 U.S.C. § 363 And (II) Granting Adequate Protection To Pre-Petition Secured Parties Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364 (the "Final DIP Order"); and

**WHEREAS**, the Final DIP Order approved, among other things, the Revolving Credit and Guaranty Agreement dated as of February 14, 2003 (as amended, supplemented, or otherwise modified, the "DIP Credit Agreement") relating to a debtor-in-possession financing facility provided by JPMorgan Chase Bank (the "DIP Agent") and a syndicate of financial institutions arranged by J.P. Morgan Securities, Inc. (collectively, with the DIP Agent, the "DIP Lenders" and, together with the Pre-Petition Agent and the Pre-Petition Lenders, the "Lenders"); and

**WHEREAS**, all parties in interest are precluded from asserting any claims challenging the perfection under applicable law of the Pre-Petition Agent's and Pre-Petition Secured Parties' liens on the Pre-Petition Collateral (as defined below) pursuant to paragraph 17 of the Final DIP Order; and

**WHEREAS**, the Debtors intend to sell substantially all of their assets and business operations through the Court-approved sale under section 363 of the Bankruptcy Code (hereinafter, the "Sale"), pursuant to the Medline Agreement (as defined below) that was approved pursuant to the Sale Order (as defined below); and

**WHEREAS**, this Stipulation Among Official Committee Of Unsecured Creditors And Pre-Petition And Post-Petition Lenders, Regarding Sale Of Substantially All Assets Of Debtors Pursuant To Section 363 Of Bankruptcy Code Or Chapter 11 Plan (the "Stipulation") contains terms and conditions agreed to by the parties to the Stipulation, specifically the Committee and each Lender who executes an Addendum in the form of Exhibit A to this Stipulation (an "Addendum") (collectively, the "Parties"), with respect to the Sale.

**NOW THEREFORE**, in consideration of the mutual covenants and agreements set forth in this Stipulation, in an effort to avoid unnecessary expenses and litigation, and with the intent to be legally bound, it is agreed among the Parties as follows:

1.   **Defined Terms**.  As used in the Stipulation, the following terms shall have the meanings specified below:

> "Agent" means (i) the DIP Agent prior to the termination of the DIP Credit Agreement and (ii) the Pre-Petition Agent thereafter.

"Assigned Claims" means (a) the Avoidance Actions and
(b) any and all of Maxxim's claims (as such term is
defined in section 101(5) of the Bankruptcy Code) and
causes of action against any entity (as such term is
defined in section 101(15) of the Bankruptcy Code)
arising under any state or federal law, including all
proceeds of the foregoing items (a) and (b), but
expressly excluding (x) the Excluded Claims; (y) any
claims to be released as described in paragraph 17
below; and (z) any of Maxxim's claims arising under the
confidentiality agreements entered into by Maxxim in
connection with its prior efforts to sell its assets.

"Avoidance Actions" means any and all of Maxxim's claims
(as such term is defined in section 101(5) of the
Bankruptcy Code) and causes of action (other than the
Excluded Claims) against any entity (as such term is
defined in section 101(15) of the Bankruptcy Code)
arising under sections 502(d), 510, 541, 542, 544, 547,
548, 550, 551, and 553(b) of the Bankruptcy Code,
including but not limited to the Fox Paine Claims and
the Sellers Claim; provided, however, that causes of
action pursuant to sections 502(d), 510, 541, and 542 of
the Bankruptcy Code only are included within the
definition of Avoidance Actions to the extent the
prosecution of such causes of action otherwise is
necessary for or related to the prosecution of the other
Avoidance Actions listed above.

"Bank Claims" means the claims, challenges, or causes of
action assertable by Maxxim and/or the Committee set
forth in paragraph 17 of the Final DIP Order, excluding
claims challenging the perfection under applicable law
of the Pre-Petition Agent's and Pre-Petition Secured
Parties' liens on the Pre-Petition Collateral.

"Bankruptcy Code" has the meaning ascribed to such term
in the Recitals.

"Bankruptcy Court" means the United States Bankruptcy
Court for the District of Delaware in which the Chapter
11 Cases currently are pending.

"Cash Collateral Order" means the Interim Order (I) Authorizing Debtors To Utilize Cash Collateral Pursuant To 11 U.S.C. § 363 And (II) Granting (A) Adequate Protection To Pre-Petition Secured Parties Pursuant To §§ 105, 361, 362 And 363 And (B) Related Relief, dated October 31, 2003, as such order may be amended, including any final version of the Cash Collateral Order.

"Chapter 11 Cases" means the above-captioned chapter 11 reorganization cases commenced on the Petition Date by Maxxim in the Bankruptcy Court.

"Circon Employee Claim" means the claim of Maxxim against ACMI Corporation (f/k/a Circon Corp.) relating to ACMI Corporation's alleged failure to (a) pay legal fees related to the Omnibus Settlement Agreement dated as of June 7, 2002; and (b) pay fees related to the Services Agreement dated as of November 12, 1999.

"Committee" has the meaning ascribed to such term in the Recitals.

"Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan.

"Conforming Bid" means a proposal to purchase all or substantially all of the Debtors' assets pursuant to the Sale, which proposal (a) is submitted to the Bankruptcy Court for approval in the Section 363 Motion; (b) expressly excludes the sale or waiver of any Assigned Claims or any limitation or restriction on the right of Maxxim or the Committee to pursue any of the Assigned Claims at any time; and (c) provides for Gross Proceeds (determined solely for this purpose at the time of the filing of the Section 363 Motion) equal to or greater than the Minimum Gross Proceeds; provided, however, that if (x) the requirements of clauses (a) and (b) hereof are met and (y) the Lenders party hereto and Maxxim agree that the Guaranteed Payment shall be deposited in the Escrow Account upon the Final Determination Date, then such proposal shall be a Conforming Bid notwithstanding the amount of Gross Proceeds.

"DIP Agent" has the meaning ascribed to such term in the Recitals.

- 6 -

"DIP Credit Agreement" has the meaning ascribed to such term in the Recitals.

"DIP Lenders" has the meaning ascribed to such term in the Recitals.

"Debtors" has the meaning ascribed to such term in the Recitals.

"Distributable Sale Proceeds" means the Gross Proceeds less the sum of (a) $50 million and (b) the Emergence Costs.

"Effective Date" means the effective date of the Plan.

"Emergence Costs" means the sum of (a) the aggregate amount of all amounts required to satisfy in full Maxxim's obligations on or after the Final Determination Date arising under the DIP Credit Agreement (including to "Cash Collateralize" (as defined in the DIP Credit Agreement) any letters of credit outstanding thereunder for so long as any such letters of credit are outstanding) to the DIP Agent and the DIP Lenders; (b) all other cash expenditures by Maxxim from the closing date of the Sale through the Effective Date, including closing and transaction costs associated with the Sale; (c) all priority and administrative expense claims payable pursuant to the Plan that are paid or reserved for under the Plan; (d) all secured claims having priority over the claims and liens of the Pre-Petition Secured Parties; (e) reasonable costs and expenses incurred after the Effective Date that relate directly to the liquidation of those remaining assets of Maxxim that are not sold pursuant to the Sale; and (f) reasonable costs and expenses that relate directly to winding-down the estates and closing the Chapter 11 Cases, including the costs and expenses of claims' reconciliation, but excluding the costs and expenses associated with the Litigation Trust.

"Excluded Claims" means the claims and causes of action that shall be retained by Maxxim and are identified on Schedule I attached hereto.

"Escrow Account" means an escrow account or other arrangements satisfactory to the Committee established for the purpose of holding either the Guaranteed Payment or, if greater, the Percentage Payment pending further distribution.

"Final DIP Order" has the meaning ascribed to such term in the Recitals.

"Final Determination Date" means the "Closing Date" as defined in the Medline Agreement.

"Fox Paine Claims" means any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code) and causes of action of Maxxim against any entity (as such term is defined in section 101(15) of the Bankruptcy Code) other than any Agent, any Lender or any other Pre-Petition Secured Parties arising out of the acquisition of MMI (Texas) and its wholly-owned subsidiary, Circon Corp., by affiliates of Fox Paine & Company LLC.

"Gross Proceeds" means the gross proceeds realized in the Sale after giving effect to any purchase price adjustment required by the terms of the agreements entered into in connection with the Sale, including for this purpose the principal amount of any claims of the Lenders assumed by the purchaser, but excluding any other liabilities assumed by the purchaser as well as closing and transaction costs associated with the Sale.

"Guaranteed Payment" means $2 million.

"Hold-Co Indenture" has the meaning ascribed to such term in the Recitals.

"Lender Distribution" means the amount paid to the Agent on behalf of the Pre-Petition Secured Parties in accordance with paragraph 7(d) below.

"Medline Agreement" means that certain Asset Purchase Agreement Among Maxxim Medical, Inc., The Subsidiaries Of Maxxim Medical, Inc. Named [T]Herein, Maxmed Acquisition LLC, Medline Industries, Inc., And Argon Medical Devices, Inc., which is attached to the Sale Order.

"Litigation Trust" means that certain litigation trust or similar vehicle or entity established pursuant to the Plan for the benefit of holders of allowed unsecured claims against MMI (Texas) and its subsidiaries.

"MMI (Delaware)" has the meaning ascribed to such term in the Recitals.

"MMI (Texas)" has the meaning ascribed to such term in the Recitals.

"Maxxim" has the meaning ascribed to such term in the Recitals.

"Minimum Gross Proceeds" means $75 million.

"Op-Co Indenture" has the meaning ascribed to such term in the Recitals.

"Parties" has the meaning ascribed to such term in the Recitals.

"Percentage Payment" means an amount equal to 7.5% of the Distributable Sale Proceeds.

"Petition Date" has the meaning ascribed to such term in the Recitals.

"Plan" means a chapter 11 liquidation plan filed in the Chapter 11 Cases.

"Pre-Petition Agent" has the meaning ascribed to such term in the Recitals.

"Pre-Petition Agreements" has the meaning ascribed to such term in the Recitals.

"Pre-Petition Collateral" has the meaning ascribed to such term in the Final DIP Order.

"Pre-Petition Credit Agreement" has the meaning ascribed to such term in the Recitals.

"Pre-Petition Lenders" has the meaning ascribed to such term in the Recitals.

"Pre-Petition Secured Parties" means the Secured Parties as defined in the Pre-Petition Agreements.

"Sale" has the meaning ascribed to such term in the Recitals.

"Sale Order" means the Order Approving Motion For Order, Inter Alia: (A) Approving The Sale Of The Purchased Assets To MaxMed Acquisition, LLC Or Such Other Successful Bidder Free And Clear Of All Liens, Claims, Interests, And Encumbrances; (B) Approving And Authorizing The Assumption And Assignment Of The Assigned Contracts; And (C) Granting Related Relief, dated October 28, 2003.

"Section 363 Motion" means the motion filed by Maxxim pursuant to section 363 of the Bankruptcy Code to obtain approval of the Sale.

"Sellers Claim" means the cause of action captioned Maxxim Med. Group, Inc. v. Sellers, Adv. Proc. No. 03-53263 (PJW) (Bankr. D. Del.).

"Stipulation" has the meaning ascribed to such term in the Recitals.

2. **Conforming Bid.** The Committee acknowledges and agrees that the Medline Agreement constitutes a Conforming Bid, and agrees to support the Sale with respect to the Medline Agreement.

3. **Standstill Agreement.** The deadline on or before which any Bank Claims must be asserted by Maxxim or the Committee shall be extended until the earlier of (i) the Effective Date and (ii) February 1, 2004 (or such later date as shall be agreed upon by the Committee and the Pre-Petition Agent); provided, however, that neither the Committee nor Maxxim shall assert or initiate any Bank Claims prior to such date.

4.   **Reduction Of Gross Proceeds.**  If the Gross
Proceeds are less than the Minimum Gross Proceeds, then the
terms and conditions agreed to, and the obligations of the
Parties set forth under the Stipulation, shall remain in full
force and effect.

5.   **Releases Of Liens.**  Subject to paragraph 19
below and the effectiveness of the consent of all of the Pre-
Petition Secured Parties to the release of liens provided in
this paragraph 5, any and all liens of the Pre-Petition
Secured Parties and the DIP Lenders on either:  (a) the
Guaranteed Payment or (b) the Percentage Payment, whichever
is greater, shall be released; provided, that such funds may
not be used by any Debtors, the Committee or any other person
to object, contest, or raise any defense to the validity,
priority, extent or enforceability of any amount due to the
Pre-Petition Secured Parties pursuant to the Pre-Petition
Agreements or any cash collateral order entered by the
Bankruptcy Court, or the liens or claims granted under the
Pre-Petition Agreements or any cash collateral order entered
by the Bankruptcy Court.

6.   **Guaranteed Payment And Percentage Payment.**
The Guaranteed Payment shall be deposited in the Escrow
Account on the Final Determination Date.  The Percentage
Payment shall be determined by the parties hereto and the
Debtors or their designated representatives from time to time
from and after the Final Distribution Date.  To the extent

that the Percentage Payment exceeds $2 million, the Parties shall cause the Debtors to pay such excess to the Escrow Account or to the Litigation Trust, as applicable, and the Final DIP Order or the Cash Collateral Order (whichever order shall be in effect shall hereinafter be referred to as the "Governing Order") shall permit the Debtors to make such payment. If it is thereafter determined that such payment(s) exceed the Percentage Payment as recalculated from time to time, the excess shall be repaid to the Debtors or their successors and assigns, provided that such adjustments shall never reduce the Percentage Payment to an amount less than $2 million.

       7.    **Priority And Timing Of Distribution Of Gross Proceeds**. The Gross Proceeds received upon the Final Determination Date shall be distributed on the Final Determination Date as follows:

a.    first, the Guaranteed Payment or the Percentage Payment, whichever is greater, shall be deposited in the Escrow Account regardless of whether the Minimum Gross Proceeds are realized and regardless of any other event or circumstance;

b.    second, an amount constituting a reasonable estimation of the Emergence Costs as agreed between Maxxim, the Committee, and the Pre-Petition Agent (including any purchase price adjustments required by the terms of the agreements entered into in connection with the Sale, but excluding the Emergence Costs set forth in sub-paragraph (c) below) shall be placed in an escrow account subject to the DIP Lenders' and Pre-Petition Secured Parties' liens;

c.   third, an amount equal to the outstanding
     principal, accrued but unpaid interest and other
     amounts payable by the Debtors under the DIP Credit
     Agreement (including to "Cash Collateralize" (as
     defined in the DIP Credit Agreement) any letters of
     credit outstanding thereunder for so long as such
     letters of credit are outstanding) shall be paid to
     the Agent on behalf of itself and the DIP Lenders
     (whereupon the DIP Credit Agreement shall be
     terminated except as expressly provided therein);

d.   fourth, $50 million (or such lesser amount as shall
     be remaining from the Gross Proceeds after
     subtracting (a), (b) and (c) above therefrom) shall
     be paid to the Agent on behalf of the Pre-Petition
     Secured Parties to be applied, first, to cash
     collateralize any outstanding letters of credit as
     described in Section 2.05(j) of the Pre-Petition
     Credit Agreement and thereafter, in accordance with
     the Pre-Petition Agreements; and

e.   fifth, any remaining amounts (after subtracting
     from the Gross Proceeds (a) through (d) above)
     shall be paid to Maxxim subject to compliance with
     the Governing Order, as such Governing Order may be
     amended to provide that remaining amounts shall be
     held in escrow subject to the Pre-Petition Secured
     Parties' liens until withdrawn pursuant to the
     Governing Order or the Plan.

     8.   **Waiver Of Lenders' Claims**.  Subject to

paragraphs 19 and 24 below and the effectiveness of the

consent of all of the Pre-Petition Secured Parties to the

release of liens provided in paragraph 5, the rights of the

Pre-Petition Secured Parties and the DIP Lenders, as the case

may be, to assert any and all liens, claims, interests, and

rights, including but not limited to their unsecured

deficiency claims; any other contractual subordination

rights; and any rights arising under the Pre-Petition

Agreements, the DIP Credit Agreement, the Final DIP Order,

the Op-Co Indenture, and the Hold-Co Indenture, with respect
to:  (a) the Guaranteed Payment, (b) the Percentage Payment,
and (c) except as provided in paragraph 13 below, the
Assigned Claims shall be waived.

        9.   **Distribution Of Proceeds Of Excluded Claims**.
Distributions of any and all net proceeds from the
prosecution, settlement, or other disposition of the Excluded
Claims shall be made to the Agent on behalf of the Lenders
and other Pre-Petition Secured Parties upon the disposition
thereof pursuant to the Plan or as adequate protection if
prior to the Effective Date, and the Governing Order shall so
provide.

        10.   **Assigned Claims**.  All right, title, and
interest of Maxxim, the Lenders and the other Pre-Petition
Secured Parties in and to the Assigned Claims shall be
assigned to the Litigation Trust pursuant to the Plan
(subject to paragraph 13 below).  The Lenders' and the other
Pre-Petition Secured Parties' assignment shall include their
unsecured deficiency claims with respect thereto; any other
contractual subordination rights with respect thereto; and
any rights thereto arising under the Pre-Petition Agreement,
the DIP Credit Agreement, the Governing Order, the Op-Co
Indenture, and the Hold-Co Indenture.

        11.   **Distribution Of Proceeds Of Assigned Claims**.
Subject to paragraphs 13, 19, and 24, below, distributions of
any and all proceeds from the prosecution, settlement, or

- 14 -

other disposition of the Assigned Claims shall be made to the holders of allowed unsecured claims against MMI (Texas) and its subsidiaries (other than the Lenders or any other Pre-Petition Secured Parties) by the Litigation Trust.

12. **Claims Reconciliation**. The Plan shall provide that Maxxim shall be responsible for reconciling asserted claims against and equity interests in the Debtors, determining which disputed claims shall become allowed ' claims, and making distributions to holders of such allowed claims (other than distributions to be made by the Litigation Trust).

13. **Circon Employee Claim**. If the Circon Employee Claim is settled or otherwise disposed of prior to the Effective Date, then, upon settlement or disposition, 50% of the proceeds of such claim shall be deposited in the Escrow Account and 50% of the proceeds of such claim shall be paid to the Agent, on behalf of the Lenders and other Pre-Petition Secured Parties, as adequate protection, and the Governing Order shall be amended to so provide. If the Circon Employee Claim has not been settled or otherwise disposed of prior to the Effective Date, the Circon Employee Claim shall be assigned to the Litigation Trust, and, upon settlement or disposition, $375,000 shall be paid to the Agent, on behalf of the Lenders and other Pre-Petition Secured Parties.

14. **Appointment Of Litigation Trustee**. The
Committee shall appoint the trustee for the Litigation Trust
and the members of any monitoring committee established with
respect to the Litigation Trust. Such trustee or monitoring
committee shall consult with the Pre-Petition Secured Parties
designee(s) solely with respect to the Circon Employee Claim
in the event that the Circon Employee Claim is assigned to
the Litigation Trust.

15. **Conversion Or Dismissal Of Chapter 11 Cases**.
The Committee and the Lenders party hereto shall waive any
right to seek to convert or dismiss the Chapter 11 Cases
following the Final Determination Date. The Committee and
the Agent, at the expense of the Debtors, also shall use
reasonable efforts to oppose any motions (other than motions
filed by the Committee) to convert or dismiss the Chapter 11
Cases following the Final Determination Date.

16. **Terms Of Plan**. The Parties shall cause Maxxim
to propose and file with the Bankruptcy Court (together with
a disclosure statement for such Plan satisfying the
requirements of Section 1125 of the Bankruptcy Code) as soon
as practicable a Plan that provides for distributions to the
Pre-Petition Secured Parties (or to the Pre-Petition Agent on
behalf of the Pre-Petition Secured Parties) of (i) the Gross
Proceeds realized in the Sale, reduced by the sum of the
aggregate amount of the Lender Distribution, Emergence Costs
actually paid, a reasonable estimate of the unpaid Emergence

Costs, and an amount equal to the greater of the Guaranteed Payment and the Percentage Payment; (ii) the net proceeds of the Excluded Claims; and (iii) any other of the Pre-Petition Secured Parties' collateral or the proceeds thereof. Such Plan shall incorporate all terms included in this Stipulation. In addition, unless the Committee or any member thereof shall have breached any of the terms of this Stipulation, such Plan shall provide for (x) distributions to the Litigation Trust of the greater of the Guaranteed Payment and the Percentage Payment, and (y) assignment, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to the Litigation Trust of the Assigned Claims, subject to paragraphs 13, 19, and 24 hereof. Each Party agrees that unless this Stipulation is terminated pursuant to its terms, it will support and not object to the provisions of any such Plan that provide for such distributions or otherwise reflect the terms of this Stipulation. Except as expressly set forth herein, the Stipulation does not address the terms and conditions of any Plan to which the Committee or any Lenders or other Pre-Petition Secured Parties otherwise will agree.

17. **Releases**. The Plan shall contain a settlement and compromise pursuant to section 1123(b)(3)(A) of the Bankruptcy Code with respect to the Bank Claims and releases of any claims (including, without limitation, the Bank Claims) against the Pre-Petition Secured Parties, the DIP Lenders, the DIP Agent, the Committee, the Committee's

- 17 -

members, and their respective agents and advisors, in each case solely in their capacity as such, in form and substance reasonably satisfactory to the Committee, the Lenders, and Maxxim.

18. **Plan Determinative Of Allocations Among Unsecured Creditors.** Nothing herein is intended to be, nor shall be construed as a determination of the allocation of distributions to the holders of allowed unsecured claims against Maxxim under the Plan. The Plan shall allocate such distributions.

19. **Effect Of Votes Against Plan.** The Plan shall provide that if either (a) the class of creditors holding claims pursuant to the Hold-Co Indenture; (b) the class of creditors holding claims pursuant to the Op-Co Indenture; or (c) to the fullest extent permitted by law, any class of creditors holding other general unsecured claims fails to vote in favor of the Plan in accordance with section 1126 of the Bankruptcy Code, then such class of creditors shall be barred from receiving distributions under the Plan, and such distribution shall instead be paid to the Pre-Petition Secured Parties pursuant to the Plan.

20. **Allowed Unsecured Deficiency Claim.** Solely for the purpose of voting under the Plan, the Pre-Petition Secured Parties shall have an allowed unsecured deficiency claim.

21. **Scope Of Stipulation.** This Stipulation sets forth the terms and conditions of the compromise and settlement of certain disputes in connection with the Chapter 11 Cases. The Committee has conducted a review of the Pre-Petition Agent's and Pre-Petition Secured Parties' liens and claims and has determined that the benefits flowing from this Stipulation outweigh any benefits that might be realized by the estate or by the general unsecured creditors of the Debtors from challenging or seeking to avoid or subordinate such liens or claims, from seeking to recover transfers made to the Pre-Petition Agent or the Pre-Petition Secured Parties, or from seeking to make other claims or counterclaims against the Pre-Petition Agent or the Pre-Petition Secured Parties. The Committee has also determined that (a) no material benefit would be realized by the estate or by the general unsecured creditors of the Debtors from challenging the Sale and (b) general unsecured creditors would benefit from the prompt resolution of any disputes with the Pre-Petition Secured Parties on the terms and conditions set forth in this Stipulation, pursuant to which the Lenders party hereto would, among other things, consent to have a portion of the proceeds of the collateral of the Pre-Petition Secured Parties reserved for Emergence Costs and for distributions to creditors of the estate other than the Pre-Petition Secured Parties. The Pre-Petition Secured Parties could, in connection with confirmation of any plan of

reorganization in the cases, assert their rights under sections 1129(a)(7) and 1129(b) of the Bankruptcy Code and seek to enforce the benefits of contractual subordination provisions contained in the Op-Co Indenture. Notwithstanding these rights, in order to expedite the distribution of the assets of the Debtors' estates, and in compromise and settlement of any disputes that might otherwise arise with respect to the Sale, the Lenders party hereto are willing, on the terms and conditions provided in this Stipulation, to allow a portion of the Pre-Petition Secured Parties' collateral to be reserved for Emergence Costs and for distributions to other creditors. The terms of the compromise and settlement set forth in this Stipulation are fair, equitable and reasonable.

22. **Integration**. This Stipulation constitutes the entire agreement of the Parties with respect to the subject matter hereof and supercedes all prior agreements and understandings, written and oral, between the Parties with respect to the subject matter hereof. All representations, warranties, promises, inducements, or statements of intention made by the Parties are embodied in this Stipulation, and no Party shall be bound by, or liable for, any alleged representation, warranty, inducement or statement of intention that is not expressly embodied herein.

23. **Successors And Assigns.** This Stipulation
shall be binding on the Parties and their respective
successors and assigns. Each of the Parties agrees not to
transfer any of its claims against the Debtors (or grant any
interest or participation therein) unless the successor
transferee, interest holder or participant, as the case may
be, agrees to be bound by all terms and conditions of this
Stipulation to the same extent as such Party, and to perform
this Stipulation in accordance with its terms.

24. **Conditions Precedent.** This Stipulation shall
become binding and effective if and only if all of the
following shall have occurred on or before November 30, 2003
or such later date as may be agreed in writing among the
Committee and the Pre-Petition Agent: (a) this Stipulation
shall have been duly executed and delivered by or on behalf
of each of (i) the Committee, (ii) the DIP Agent, and (iii)
the Pre-Petition Agent; (b) Pre-Petition Lenders representing
not less than one-half (½) in number of the Pre-Petition
Lenders and holding not less than two-thirds (⅔) in
principal amount of the loans under the Pre-Petition Credit
Agreement shall have executed an Addendum; and (c) each of
the DIP Lenders shall have executed an Addendum. Each
Addendum, when executed, shall be a part hereof, and
execution thereof shall have the same force and effect as
affixing a signature directly on this Stipulation. If (x)
any Plan incorporating the material terms of the Stipulation

is not confirmed at the confirmation hearing therefor, (y) any Plan is filed that does not incorporate the material terms of this Stipulation (unless at such time the Debtors have a Plan on file that incorporates the material terms of this Stipulation and such Plan has not been modified in any way that would fail to incorporate the material terms of this Stipulation or withdrawn), or (z) the Final Determination Date does not occur prior to the Effective Date, then this Stipulation shall terminate and be of no further force and effect, and neither this Stipulation, nor any of the negotiations and writings in connection with this Stipulation, shall in any way be construed as or deemed to be evidence or an admission on behalf of any Party regarding any claim or right that such Party may have against any other Party.

25. **Execution.** This Stipulation may be executed ` in one or more counterparts and by facsimile, all of which shall be considered one and the same agreement, and shall become effective when one or more such counterparts have been signed by each of the Parties and delivered to all of the Parties.

26. **Jurisdiction.** The Parties shall seek in good faith to resolve without litigation any disputes that may arise in connection with this Stipulation. The Parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to interpret, implement, and enforce the provisions of this

Stipulation, and each of the Parties consent to the jurisdiction of this Court for this purpose.

27. **Choice Of Law**. This Stipulation shall be governed by and construed in accordance with the laws of the State of New York.

28. **Headings**. Section headings used in the Stipulation are for convenience only and are not to affect the construction of, or be taken into consideration in ' interpreting this Stipulation.

[SIGNATURE PAGE FOLLOWS]

**SIGNATURE PAGE FOR STIPULATION AMONG OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PRE-PETITION AND POST-PETITION LENDERS, AND MAXXIM MEDICAL GROUP, INC., ET AL., REGARDING SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTORS PURSUANT TO SECTION 363 OF BANKRUPTCY CODE OR CHAPTER 11 PLAN**

Dated:     Wilmington, Delaware
           November 5, 2003

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: _____

    Stephen J. Blauner
    James C. Tecce
    1 Chase Manhattan Plaza
    New York, New York  10005
    (212) 530-5000

    -and-

**MORRIS, NICHOLS, ARSHT & TUNNELL**

    Robert J. Dehney (No. 3578)
    Gregory W. Werkheiser (No. 3553)
    Jason W. Harbour (No. 4176)
    1201 North Market Street
    P.O. Box 1347
    Wilmington, Delaware  19899-1347
    (302) 658-9200

Co-Counsel For Official Committee
Of Unsecured Creditors of Maxxim
Medical Group, Inc., et al.

**DAVIS POLK & WARDWELL**

By: _____

    Nancy A. Sanborn
    Julie E. Anderson
    450 Lexington Avenue
    New York, New York  10017
    (212) 450-4000

    -and-

**RICHARDS, LAYTON & FINGER, P.A.**

    Mark D. Collins
    One Rodney Square
    P.O. Box 551
    Wilmington, Delaware  19899
    (302) 651-7700

Co-Counsel For JPMorgan Chase Bank,
Administrative Agent for the Lenders

**Exhibit A**

ADDENDUM TO STIPULATION AMONG OFFICIAL COMMITTEE OF UNSECURED
CREDITORS AND PRE-PETITION AND POST-PETITION LENDERS REGARDING SALE OF
SUBSTANTIALLY ALL ASSETS OF DEBTORS PURSUANT TO SECTION 363 OF
BANKRUPTCY CODE OR CHAPTER 11 PLAN

Reference is made to the Stipulation Among Official

Committee Of Unsecured Creditors And Pre-Petition And Post-Petition

Lenders Regarding Sale Of Substantially All Assets Of Debtors

Pursuant To Section 363 Of Bankruptcy Code Or Chapter 11 Plan,

dated November 5,2003 (the "**Stipulation**") filed in Maxxim's Chapter

11 Cases that currently are pending in the United States Bankruptcy

Court for the District of Delaware.  All terms defined in the

Stipulation shall have the same meanings as used herein.  The

undersigned hereby becomes a Party to the Stipulation and agrees to

be bound by the terms thereof.  This Addendum shall be deemed for

all purposes to be a part of the Stipulation, and our signature

below shall have the same force and effect as affixing the

signature of the undersigned directly to the Stipulation.

Principal Claim: $_____
(Name of Entity)  _____

By: _____
Name:
Title:

### Schedule I[1]
### (Excluded Claims)

All promissory notes from Lemco Enterprises.

All promissory notes from Suzanne Garon.

All promissory notes from Akbar Naderi.

All intercompany claims and interests.

All Bank Claims and all other claims and causes of action against any DIP Secured Parties and/or any Pre-Petition Secured Parties (each as defined in the Final DIP Order) and their respective predecessors in interest, successors and assigns, and their respective affiliates, agents, officers, directors, employees, financial advisors, attorneys and other representatives, including without limitation claims and causes of action arising under sections 502(d), 510, 541, 542, 544, 545, 547, 548, 550, 551 and 553 of the Bankruptcy Code and any challenges with respect to the validity, enforceability, priority or extent of their respective claims or the liens on the collateral securing such claims.

All claims and causes of action against ACMI Corporation (formerly known as Circon Corporation) related to current accounts receivable or related to the failure to pay for certain products and/or supplies, excluding, however, (i) any and all Avoidance Actions against ACMI Corp. (or Circon Corp.); (ii) the Fox Paine Claims; (iii) the Circon Employee Claim (except as otherwise set forth in paragraph 13 or 19 of the Stipulation); and (iv) any and all claims or causes of action relating to the November 1999 leveraged buyout of Maxxim Medical, Inc. (Texas) and the sale of Circon Corp. as part of the same transaction.

All claims and causes of action related to the An-Con Genetics, Inc. stock and/or any purported transfer thereof.

All claims and causes of actions pursuant to any contracts or leases to which any Debtor is a party (other than the Circon Employee Claim and the Sellers Claim).

All claims and causes of action related to the supply license agreement between MMI and InnerDyne, Inc., dated March 27, 2000 and amended October 2000.

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Stipulation Among Official Committee Of Unsecured Creditors And Pre-Petition And Post-Petition Lenders Regarding Sale Of Substantially All Assets Of Debtors Pursuant To Section 363 Of Bankruptcy Code Or Chapter 11 Plan, dated November 5, 2003.

All claims and causes of action related to Sterilizer Services of Virginia including claims listed in the complaint filed against ACE Insurance and Indemnity Insurance Company of North America on June 12, 2002 alleging breach of contract for failure by ACE to pay an insurance claim.

Claims and causes of action for breach of the contract between MMI and Andersen dated November 8, 2001; excluding, however, any tort claims arising from or relating thereto.

All claims and causes of action related to the Los Gatos facility.

All claims and causes of action listed on any schedule to the Existing Agreements or Documents (each as defined in the Final DIP Order).

All claims and causes of action arising under or related to the Lightyear Agreement or Back-Up Agreement and any related agreements.

All other claims and causes of action arising under any state or federal law that constitute or relate to accounts, chattel paper, deposit accounts, documents, equipment, farm products, instruments, inventory, investment property, letter of credit rights (in each case, as defined in the Uniform Commercial Code), intellectual property, agreements, leases, real property or other collateral of the Debtors' pre-petition and post-petition lenders that is not solely a cause of action, including insurance proceeds in respect of any such property (other than Avoidance Actions, the Circon Employee Claim and the Sellers Claim).